**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000021
21-JUN-2017
10:46 AM**

NO. CAAP-14-0000021

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ARLEY H. NOZAWA, Plaintiff-Appellant,
v.
OPERATING ENGINEERS LOCAL UNION NO. 3,
Defendant-Appellee,
and
JOHN DOES 1-5, JANE DOES 15, DOE CORPORATIONS 1-5,
DOE LLCS 1-5, DOE PARTNERSHIPS 1-5, DOE NON-PROFIT
ORGANIZATIONS 1-5 and DOE GOVERNMENTAL AGENCIES 1-5,
Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-2623-10)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Fujise and Ginoza, JJ.)

Plaintiff-Appellant Arley H. Nozawa (**Nozawa**) appeals from a Final Judgment (**Judgment**) filed on October 18, 2013, and an order denying Nozawa's motion for reconsideration filed on December 4, 2013, in the Circuit Court of the First Circuit (**circuit court**).[1] Nozawa brought claims against Operating Engineer Local Union No. 3 (**Union**) for allegedly terminating her employment on the basis of sex discrimination in violation of Hawaii Revised Statutes (**HRS**) § 378-2 (Supp. 2010).

---

[1] The Honorable Karen T. Nakasone presided.

On appeal, Nozawa contends that the circuit court (1) abused its discretion in striking the declaration of William Mahoe (**Mahoe**) and/or in denying Nozawa's oral motion to supplement the record with Mahoe's declaration; and (2) erred in granting Union's motion for summary judgment.

For the reasons discussed below, we affirm.

## I.   William Mahoe's Declaration.

Nozawa contends that, in addressing the Union's motion for summary judgment, the circuit court abused its discretion when it struck the Declaration of Mahoe, the Union's former Treasurer, which was submitted in supplemental briefing.[2] Nozawa also asserts the circuit court abused its discretion in denying Nozawa's oral motion to supplement the record with Mahoe's declaration. We do not agree because, as noted by the circuit court, it permitted the Union to file supplemental briefing and Nozawa to file a supplemental brief in response, with respect to a limited area. Mahoe's declaration went beyond the scope of supplemental briefing allowed by the circuit court, and Nozawa provided no justification for failing to submit Mahoe's declaration with her initial opposition memorandum.

The relevant proceedings were as follows. On February 12, 2013, Union filed its summary judgment motion supported by the declarations of, *inter alia*, Dan Reding (**Reding**), the Financial Secretary of Union, and Toni Mendes (**Mendes**), the

---

[2] Mahoe's declaration states in pertinent part:

3.   During 2009 and 2010 I attended union meetings attended by Russ Burns, Dan Redding [sic], and other officers of [Union].

4.   At the meetings in 2009 and 2010 it was discussed that the management officers of [Union] wanted to have men in dispatch positions rather than women.

5.   I objected to the replacement of women by men in dispatch positions. Hawaii had Arley Nozawa in dispatch and I wanted her to remain as the dispatcher rather than replace her with a man. I felt she was doing a good job in dispatch.

Office Systems and Job Placement Center Coordinator of Union. Reding and Mendes attested that in January 2010, Nozawa made a serious dispatching error pertaining to a Union member, Richard Conradt Jr. (**Conradt**), resulting in Conradt losing a work opportunity and benefits.[3] Reding attests that as a result of the error, Conradt filed an unfair labor charge with the National Labor Relations Board (**NLRB**), the Union agreed to settle the charge because Nozawa's error resulted in Conradt losing a job opportunity, the Union paid Conradt $19,866.40 in back pay and fringe benefits, and the Union paid about $5,500 in legal fees to defend the charge. Reding further attests that the Union "has never had a dispatching error of this nature that has resulted in the [Union] having to pay a monetary settlement of any kind to a member or registrant." According to Reding, he decided to terminate Nozawa as a result of the error, but was asked by Eugene Soquena (**Soquena**), the District Representative at the time, that Nozawa be given a last chance to improve. Rather than terminating Nozawa, she was given a Final Written Warning dated April 19, 2010, which she signed. In her declaration, Mendes attested that prior to the Conradt error, Nozawa "made a number of recurring errors in dispatch and inaccurate registration overrides for [Union] members," and that Nozawa continued to make mistakes after the Final Written Warning was issued to her. According to Reding, he was aware that Nozawa continued to make dispatching mistakes following the Final Written Warning, and as part of a staffing reorganization, Nozawa was terminated on February 3, 2011.

---

[3] Union is a labor organization and part of its function is dispatching members to jobs pursuant to Job Placement Regulations for the particular state. According to Mendes's declaration, Conradt was referred out to a job and was entitled to be returned to his original registration date under Section 05.19.00 of the Job Placement Regulations. However, Nozawa allegedly did not return him to the correct status under Section 05.19.00 and Conradt lost the opportunity to be dispatched to a job of significant duration.

On April 22, 2013, Nozawa filed her opposition[4] to the summary judgment motion and attached her declaration in which she attested, *inter alia*, that: "I did not have any performance problems at the time of termination"; and "I had been falsely accused of making a mistake regarding the placement of [Conradt] . . . I had followed proper protocol."

On June 19, 2013, Union filed a motion seeking to supplement its summary judgment motion with newly discovered evidence pertinent to Nozawa's claims in her declaration. The circuit court granted the motion allowing Union to file a supplemental memorandum and allowing Nozawa to file a supplemental memorandum in opposition addressing the Union's supplemental memorandum. At a continued hearing on September 27, 2013, the circuit court stated "the [supplemental briefing] motion was . . . for [Union] . . . to respond to [Nozawa's allegations of being] falsely accused and describing why they didn't have enough time to do it at the original hearing." Thus, as to the merits of the summary judgment motion, the supplemental briefing was limited to Nozawa's claim of being falsely accused of making the Conradt dispatching error and Nozawa's opposition was also limited to the same scope. Mahoe's declaration did not address whether Nozawa was falsely accused.

Given this record, and the limited nature of what the circuit court authorized in supplemental briefing, the Mahoe Declaration exceeded the scope of the supplemental briefing. The circuit court did not abuse its discretion when it struck the declaration.

Nozawa also sought to introduce Mahoe's declaration through an oral motion to supplement the record which appears to be a request under Hawai'i Rules of Civil Procedure (HRCP) Rule 56(f). However, Nozawa failed to submit Mahoe's declaration with her opposition to the summary judgment motion filed on April 22,

---

[4] In her opposition, Nozawa voluntarily dismissed Count II, Count III, and Count IV. Accordingly, we only consider Count I of the original complaint in this appeal.

2013, even though she had previously named Mahoe as a witness in her Final Naming of Witnesses filed on April 5, 2013. Nozawa also did not request a Rule 56(f) continuance upon filing her opposition, and at no time provided a reason justifying her failure to timely submit Mahoe's declaration.[5] See HRCP Rule 56(f); Kaneohe Bay Cruises, Inc. v. Hirata, 75 Haw. 250, 269, 861 P.2d 1, 11 (1993) (stating that additional evidence introduced along with a motion for reconsideration should have been presented in the original summary judgment proceedings, or the party should have sought a continuance under HRCP Rule 56(f) if more time was needed to obtain the evidence).

Instead, Nozawa introduced Mahoe's declaration for the first time as part of her supplemental briefing filed on September 12, 2013, over four and a half months after filing her opposition to the summary judgment motion. Given these circumstances, including the circuit court's limited order allowing supplemental briefing and Nozawa's failure to provide any justified basis for the late submission of Mahoe's declaration, the court did not abuse its discretion in denying Nozawa's oral motion to supplement the record.

## II. Summary Judgment

Nozawa contends the circuit court erred in granting Union's motion for summary judgment because: (1) Union failed to establish a legitimate, nondiscriminatory explanation for Nozawa's termination and (2) the circuit court erroneously failed to consider Nozawa's declarations when it determined that the statements were "self-serving" and "uncorroborated."

Sex discrimination is governed by HRS § 378-2 and a plaintiff may prove discrimination based on circumstantial evidence. Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 378-79, 14 P.3d 1049, 1059-60 (2000) (discussing the burden-shifting analysis that Hawai'i courts use when considering a claim of age

---

[5] The Union, on the other hand, had filed a motion supported by its counsel's declaration that justified why supplemental briefing was warranted to address certain statements in Nozawa's declaration.

discrimination under HRS § 378-2 that relies on circumstantial evidence). The Hawai'i Supreme Court has adopted a three-step analysis, referred to as the Shoppe-McDonnell analysis, in discrimination cases that rely on circumstantial evidence. Adams v. CDM Media USA, Inc., 135 Hawai'i 1, 13, 346 P.3d 70, 82 (2015).

> First,
>
> the plaintiff must establish a prima facie case of discrimination by demonstrating, by a preponderance of the evidence, the following four elements: (1) that plaintiff is a member of a protected class; (2) that plaintiff is qualified for the position for which plaintiff has applied . . .; (3) that plaintiff has suffered some adverse employment action . . .; and (4) that the position still exists.

Shoppe, 94 Hawai'i at 378, 14 P.3d at 1059.

Second, "[o]nce the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Id. "The employer's explanation must be in the form of admissible evidence and must clearly set forth reasons that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the challenged employment action."[6] Id. Recently, the Hawai'i Supreme Court further held that "the nondiscriminatory reason articulated by the employer for the adverse employment action must be related to the ability of the individual to perform the work in question." Adams, 135 Hawai'i at 22, 346 P.3d at 91. In Adams, the supreme court also recognized that an employer's nondiscriminatory reason for an adverse employment action could result from a reorganization where the reason for the employment action is related to a person's ability to perform the work in question. Id. at 20-21, 346 P.3d at 89-90 (citing

---

[6] "The employer's burden to articulate a legitimate, nondiscriminatory reason is not a burden to prove the truth of the legitimate, nondiscriminatory reason. That is, the requirement in the second step is that the 'explanation' articulated be legitimate, not that the employer prove that the reason was true or correct." Adams, 135 Hawai'i at 23, 346 P.3d at 92 (citation omitted).

Simmons v. Aqua Hotels & Resorts, Inc., 130 Hawai'i 325, 310 P.3d 1026 (App. 2013)).

Third, "if the employer rebuts the prima facie case, the burden reverts to the plaintiff to demonstrate that the defendant's proffered reasons were 'pretextual.'" Shoppe, 94 Hawai'i at 379, 14 P.3d at 1060. "A plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (citation and internal quotation marks omitted). In circumstances where an employer hires another individual over the plaintiff, minor differences in qualifications between a plaintiff and the successful applicant are not sufficient to show pretext. Jaramillo v. Colorado Judicial Dep't, 427 F.3d 1303, 1308-09 (10th Cir. 2005)(cited with approval in Adams, 135 Hawai'i at 48, 346 P.3d at 117 (Recktenwald, C.J., concurring and dissenting)). Moreover, "in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." Bender v. Hecht's Dep't Stores, 455 F.3d 612, 627 (6th Cir. 2006)(cited with approval in Adams, 135 Hawai'i at 48, 346 P.3d at 117 (Recktenwald, C.J., concurring and dissenting)).

Here, Nozawa has shown that: she is a woman and thus a member of a protected class; that she was terminated from her position as dispatcher and thus suffered an adverse employment action; and that the position of dispatcher still exists. Although in the circuit court the parties disputed whether Nozawa demonstrated that she is qualified for the position, on appeal, the parties focus on the second and third steps of the Shoppe-McDonnell framework. Thus, for purposes of this appeal, we will focus our review on steps two and three of the analysis.

With regard to the second step of the Shoppe-McDonnell analysis, the Union submitted the declaration of Mendes, who is located in California but was Nozawa's "trainer and technical supervisor" and who was "familiar with her work history and work performance." Mendes attested, *inter alia*, that: Nozawa made a serious dispatching error in January 2010, related to Union member Conradt; that even prior to this incident Nozawa made a "number of recurring errors in dispatch and inaccurate registration overrides for members who she placed on the [out of work list]"; that from late 2008 until Nozawa was terminated, Mendes "reported to the Officer-in-Charge for Hawaii that Ms. Nozawa was not fully competent at her job"; as a result of the Conradt dispatching error, Nozawa received the Final Written Warning on April 19, 2010; thereafter, Mendes "engaged in numerous telephone calls and emails with Ms. Nozawa in further effort to train her in the proper dispatch procedures[,]" but that Nozawa "continued to make mistakes, particularly with regard to the registration dates and times of registrants, which resulted in the incorrect placement of persons on the out of work list[.]" Mendes also attested to, and attached as an exhibit, an email exchange she had with Nozawa which Mendes asserts shows Nozawa's inability to run a monthly registration list.

The Union also submitted the declaration of Reding, who attests that he was appointed in July 2010 to serve as the Officer-in-Charge of the Hawaii District office and in that capacity oversaw the operations of the Hawaii district office and assisted the district representative in management concerns. As noted above, Reding became aware of Nozawa's error regarding Conradt, initially wanted to terminate her as a result, but then issued the Final Written Warning.[7] Reding further attested that,

_____

[7] The Final Written Warning states, in relevant part:

> It has come to our attention that you continue to make numerous mistakes in the discharge of your duties as Dispatcher. Among others, key areas of deficiencies is your

(continued...)

after issuance of the Final Written Warning, Mendes "continued to work with Ms. Nozawa in an attempt to improve her understanding of the dispatching procedures, but reported to me that Ms. Nozawa was still failing to comprehend the Job Placement Regulations." Reding attests that in January 2011, a new district representative, Pane Meatoga (**Meatoga**) was appointed who wanted to bring in his own secretary and hire a particular person as an organizer; and there was only one organizer position in the District at that time, filled by Donald Gentzler (**Gentzler**), who also worked as a back up dispatcher. Given Reding's knowledge that Nozawa continued to make mistakes, he suggested and Meatoga agreed "that as part of the staffing reorganization Ms. Nozawa should be terminated and Mr. Gentzler moved into the full-time dispatcher position." Reding further attests that Gentzler has been employed by Union in Hawai'i as an organizer since September 2007, and that as an organizer "he obtained in-depth experience with the collective bargaining agreement and the Job Placement Regulations." Reding also attests that he reviewed Gentzler's personnel file and work history and that Gentzler's "file and history contain no written warnings of any kind regarding inadequate job performance." Mendes also attests that she "trained and monitored Mr. Gentzler in his dispatching duties as

---

[7](...continued)

        lack of a clear grasp and understanding of the Hawaii Job Placement Regulations (JPR). Consequently, this has caused you to dispatch members improperly. Additionally, there is an inordinate amount of registration overrides caused by errors. Some of these overrides used incorrect dates which allowed our members and others to be dispatched incorrectly, seriously exposing our local to potential legal liability. Recently, this transgression manifested itself in the dispatch of member Richard Conrad, Jr. [sic] We are still assessing the potential damage this error may ultimately cause.

        This will serve notice to you that any further mistakes on your behalf in carrying out your duties, will result in the immediate termination of your employment with OE3. Additionally, if in the course of our investigation in the processing of Mr. Conrad's [sic] registration and dispatch, we find additional errors, you will be subject to immediate termination of employment.

District 17 dispatcher[,]" and that throughout his tenure as back-up dispatcher and then full-time dispatcher, Gentzler "did not make any serious dispatching errors like those made by Ms. Nozawa." According to Mendes's declaration, Gentzler replaced Nozawa as the full-time dispatcher as of February 4, 2011, and stayed in that position through July 31, 2012.

Nozawa argues on appeal that Mendes's supplemental declaration attached to Union's April 25, 2013 reply memorandum contains assertions that are inadmissible hearsay. However, Nozawa did not challenge the admissibility of the declaration in the circuit court and thus her challenge on appeal is deemed waived. Price v. AIG Hawai'i Ins. Co., 107 Hawai'i 106, 111-12, 111 P.3d 1, 6-7 (2005) (holding that a failure to challenge the admissibility of documents related to a summary judgment motion in the trial court waived the issue on appeal).

Even assuming that Nozawa properly preserved this issue on appeal, Mendes's second supplemental declaration attached to Union's September 9, 2013 supplemental reply provides foundation such that the declaration falls under the hearsay exception of records of regularly conducted activity in Hawai'i Rules of Evidence (HRE) Rule 803(b)(6). Mendes attested that she is familiar with the exhibits showing the dispatching mistakes, that Union keeps them in the ordinary course of business, and that they were created at or near the time of the event, and based on the error corrections, Nozawa's entries "were not in accordance . . . with any policy or protocol [Union] issued to any of its dispatchers" and "[h]ad [Nozawa] followed proper protocol," Nozawa "would not have entered incorrect registration dates[.]"

Given the declarations submitted, we conclude the Union articulated legitimate and nondiscriminatory reasons for Nozawa's termination based on the staff reorganization when a new district representative was appointed and considering Nozawa's ability to perform the dispatch work as compared to Gentzler. It is undisputed that Union underwent a staff reorganization when Meatoga was appointed as the new district representative.

Further, Nozawa's work performance issues were already documented in the Final Written Warning that she had received and signed. The Union's evidence shows that, in light of the staff reorganization and Nozawa's performance issues, the Union terminated Nozawa and moved Gentzler into the dispatcher position, where he stayed for almost one and a half years. These reasons are properly related to Nozawa's ability to perform the work in question. See Adams, 135 Hawai'i at 20-21; 346 P.3d at 89-90; Simmons, 130 Hawai'i at 331, 310 P.3d at 1032.

Under the Shoppe-McDonnell analysis, the burden thus shifted back to Nozawa to demonstrate that the Union's proffered reasons were pretextual. The only proper evidence Nozawa provides to support her claim that she was terminated because of her gender, and not because of her ability to perform the duties of her job, are her declarations which include the assertion that she "always received excellent employment evaluations." She also attested that she was falsely accused of making a mistake regarding Conradt and that, "I signed for the Final Written Warning, but disputed that I had made a mistake." However, Nozawa provides no documentation or further details about disputing the Final Written Warning.

More importantly, however, Nozawa does not contest that there was a staff reorganization due to Meatoga being appointed district representative, and further, she does not provide any evidence to the effect that she was more qualified than Gentzler for the dispatcher position. Whereas the Union provided evidence that Gentzler was knowledgeable about the collective bargaining agreement and the Job Placement Regulations based on his prior position as organizer, and that he did not make any serious dispatching mistakes like Nozawa when he was a part-time dispatcher, Nozawa does not provide any evidence that her work abilities were superior to Gentzler such that her termination was pretextual. Given the record, we conclude Nozawa failed to raise a genuine issue of material fact that the Union's proffered reasons for terminating her were pretextual.

11

Therefore, the circuit court did not err in granting summary judgment for Union.

### III. Conclusion

Based on the foregoing, the Final Judgment filed on October 18, 2013, in the Circuit Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawai'i, June 21, 2017.

On the briefs:

Charles H. Brower,
for Plaintiff-Appellant.

Ashley K. Ikeda,
Stephanie L. Marn,
(Weinberg Roger & Rosenfeld),
for Defendant-Appellee.

*Craig H. Nakamura*
Chief Judge

Associate Judge

Associate Judge

12